[Cite as *State v. Harsha*, 2025-Ohio-4611.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :

           Plaintiff-Appellee,          :          Case No. 24CA16

           Plaintiff-Appellee,          :

           v.                           :          <u>DECISION AND JUDGMENT ENTRY</u>

                                        :

REBECCA HARSHA,                         :

           Defendant-Appellant.         :          **RELEASED: 09/29/2025**

---

<u>APPEARANCES:</u>

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, Chillicothe, Ohio, for appellee.

---

Wilkin, J.

{¶1} This is an appeal from a Ross County Court of Common Pleas judgment entry of conviction in which appellant, Rebecca Harsha, was found guilty by a jury of one count of felonious assault, a second-degree felony. The trial court imposed an indefinite prison term of a minimum of five years with a maximum prison term of seven and a half years.

{¶2} Harsha presents five assignments of error challenging her conviction and sentence. We find no merit to any of her four arguments challenging her conviction, and, accordingly, we affirm her felonious assault conviction. However, Harsha also challenges her sentence and maintains that the trial court failed to advise her of the required notifications associated with an indefinite prison term. The State concedes this error. Therefore, because the trial court

failed to provide the required notifications associated with an indefinite prison term pursuant to R.C. 2929.19(B)(2)(c), we remand the matter to the trial court for resentencing.

                    FACTS AND PROCEDURAL BACKGROUND

{¶3} Harsha and the victim, J.F., met approximately three and a half years prior to Harsha ramming her vehicle into J.F.'s vehicle three times on May 4, 2023.  With the final impact causing her to strike J.F.'s driver's side, after which Harsha fled the scene.

{¶4} These collisions occurred after J.F. informed Harsha via text that he was blocking her and their relationship was over.  Harsha received that last text message and decided to go to J.F.'s house to talk.  On the way, however, she saw J.F. driving on the other side of the road.  Harsha turned her vehicle around and began following J.F. and then rear-ended J.F.'s vehicle.  J.F. was shocked and reacted by speeding and trying to get away.  Harsha continued to pursue him, eventually catching up and rear-ending J.F.'s vehicle once more.  J.F. continued to speed and testified to speeding up to 100 mph on a road with the speed limit at 55 mph.  J.F. was afraid for himself and for others.  So, after the second collision, he decided to pull into the farmer's market away from the gas pumps and people, and into the tree line.  As he approached the farmer's market at a speed of approximately 55 mph, and turned towards the tree line, Harsha struck J.F.'s vehicle on the driver side.

{¶5} This last collision was captured on video as the farmer's market had exterior cameras that were recording.  The video was played during trial and

admitted as an exhibit.  In the video, both vehicles can be seen driving at a high rate of speed as they entered the farmer's market area and went towards the tree line.  Harsha's car is seen colliding with J.F.'s vehicle with her front end t-boning J.F.'s driver's side.  J.F. is seen getting out of the vehicle and running toward the people near the gas pumps.  Harsha is seen exiting her vehicle but then getting back in and driving away.  Harsha abandoned the vehicle nearby.

{¶6} Law enforcement was contacted and Trooper Tyler Boetcher of the State Highway Patrol Office located Harsha's vehicle nearby in a parking lot, and within two hours, met Harsha at her friend's house.  The trooper's interaction with Harsha was recorded and admitted as an exhibit at trial.  In both the farmer's market video of the final collision and the video of Harsha interacting with the trooper, Harsha was wearing the same attire.  Harsha informed the trooper that she was not the driver, but she later amended that statement and admitted to being the driver.

{¶7} Based on her conduct, Harsha was charged with one count of felonious assault.  She pleaded not guilty and the matter proceeded to a jury trial. The State presented three witnesses: J.F., his sister, N.F., and Trooper Boetcher.  Additionally, the State admitted several exhibits including pictures of both vehicles, the video from the farmer's market, and the recording of Harsha's interaction with Trooper Boetcher.  Harsha testified on her own behalf.

{¶8} The jury found Harsha guilty of felonious assault as charged.  The trial court proceeded directly to sentencing and imposed an indefinite prison term of five years and a maximum prison term of seven and a half years.  It is from

this judgment of conviction entry that Harsha appeals.

## FIRST ASSIGNMENT OF ERROR

MS. HARSHA'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS CONTRARY TO THE MANIFEST WEIGHT OF EVIDENCE.

{¶9} In the first assignment of error, Harsha argues that the evidence presented at trial did not support her conviction for felonious assault. Harsha concedes that an automobile could be used as a deadly weapon pursuant to R.C. 2903.11(A)(2), but that determination focuses on the intent of the driver, and here, the evidence failed to demonstrate that she acted intentionally. Harsha contends that the conviction is not supported by the evidence because the evidence demonstrated that J.F.'s actions were reckless and he likely would have crashed regardless of whether Harsha was behind him. J.F. in his testimony admitted to speeding at a high rate of speed, up to 100 mph, and because of his speed he had to hit the brakes. And J.F. slamming on his brakes was the cause of the accident to which Harsha could not avoid colliding into his vehicle. Therefore, there was no intention by Harsha to hit J.F. and without intention to use her vehicle as a weapon, her conviction should be reversed.

{¶10} The State in response contends that it presented evidence that Harsha was upset after J.F. told her he needed space and when she saw him on the road, she rammed him three times. And after the last hit, Harsha was threatening J.F. and his sister, and she lied about not being the driver. The State contends that the jury did not lose its way as the evidence demonstrated Harsha was chasing J.F. down with her car and he was trying to avoid being hit by her.

The State asserts that the video from the farmer's market speaks for itself and demonstrates Harsha's intentional act of striking J.F.'s car and then fleeing the scene. Specifically, the video shows they were driving at a high rate of speed and Harsha deliberately turned to hit J.F.'s car, and J.F. suffered physical harm. Accordingly, the State maintains that the jury did not lose its way in finding Harsha guilty of felonious assault.

Law and analysis

{¶11} When reviewing whether the evidence is sufficient to sustain a conviction, the focus is on the adequacy of the evidence. *See State v. Sims*, 2023-Ohio-1179, ¶ 115 (4th Dist.). Thus, "[t]he standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id*.

{¶12} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest

weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶13} The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 2014-Ohio-1966, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), citing *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.).

{¶14} In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.), citing *State v. Wilson*, 2014-Ohio-3182, ¶ 24 (9th Dist.), citing *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences (sic.) do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 2015-Ohio-5332, ¶ 31 (4th Dist.), quoting *State v. Proby*, 2015-Ohio-3364, ¶ 42 (10th Dist.), citing *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.).

{¶15} A finding that a conviction is supported by the manifest weight of the evidence is "also dispositive of the issue of sufficiency." *Sims*, 2023-Ohio-1179, ¶ 120 (4th Dist.), citing *State v. Waller*, 2018-Ohio-2014, ¶ 30 (4th Dist.).

**{¶16}** Harsha was convicted of felonious assault in violation of R.C. 2903.11(A)(2) which provides that: "No person shall knowingly do either of the following . . . (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Pursuant to R.C. 2901.22(B):

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶17}** And physical harm "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Further,

> When an automobile is used in a manner likely to produce death or grave bodily harm, it can be classified as a deadly weapon under R.C. 2923.11. *State v. Tortarella,* 11th Dist. No.2002-L-147, 2004-Ohio-1175, at ¶ 64; *State v. Allsup,* 3d Dist. Nos. 6-10-06, 6-10-07, 2011-Ohio-405, at ¶ 23. "When determining whether an automobile is a deadly weapon, a court should consider the intent of the user, the nature of the weapon, the manner of its use, the actions of the user and the capability of the instrument to inflict death or serious bodily injury." *State v. Evans,* 10th Dist. No. 01AP-112, 2002-Ohio-3322, ¶ 22 citing *State v. Gimenez* (Sept. 4, 1997), 8th Dist. No. 71190, *State v. Upham* (May 12, 1997), 12th Dist. No. CA96-08-157.

*State v. Bandy*, 2011-Ohio-4332, ¶ 22 (7th Dist.).

**{¶18}** Thus,

> While the determination of vehicle as a deadly weapon is based on intent and manner of use, a deadly weapon is defined based on capabilities, not use. An instrument, no matter how

innocuous when not in use, is a deadly weapon if it is of sufficient size and weight to inflict death upon a person, when the instrument is wielded against the body of the victim or threatened to be so wielded. The manner of use of the instrument, its threatened use, and its nature determine its capability to inflict death." *State v. Deboe,* 62 Ohio App.2d 192, 193 (6th Dist. 1977).

*State v. Smith*, 2025-Ohio-1807, ¶ 37 (6th Dist.).

{¶19} In the matter at bar, Harsha while driving her vehicle collided with J.F.'s vehicle and caused him physical harm. There is no dispute that J.F. suffered physical harm in which he was hit twice from behind and the final collision he was hit on the driver side. J.F.'s vehicle's air bags deployed including the one in the steering wheel and hit his face. J.F. testified that as a result of the three collisions, he had minor scratches and he was in pain for several weeks.

{¶20} Harsha's argument focuses on her mental culpability for the offense and maintains that she did not knowingly collide into J.F.'s vehicle. We first want to note that the jury's verdict demonstrates that the jury believed J.F.'s testimony and relied on the State's exhibits. And, as we previously stated, a verdict is not against the manifest weight of the evidence simply because the jury believed the State's witnesses. *See Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.). Harsha's "state of mind, moreover, may be 'inferred from the totality of circumstances surrounding the incident.' " *State v. Stevens*, 2020-Ohio-6981, ¶ 27 (6th Dist.), quoting *State v. Rodriquez*, 2003-Ohio-3453, ¶ 36 (6th Dist.), citing *State v. Booth*, 133 Ohio App.3d 555 (10th Dist.1999).

{¶21} J.F. testified that earlier in the day, he sent Harsha a message saying it is over and that he was blocking her. Later, while driving back to his

house, he spotted Harsha driving on the other side of the road.  After seeing Harsha, J.F. looked in his rear view mirror and saw Harsha make a U-turn and begin to follow him.  And soon thereafter, Harsha was right behind J.F. and rear-ended his vehicle.  J.F. reacted by attempting to get away, weaving in traffic and speeding.  Harsha caught up to him and again rear-ended him.  At this point, J.F. was worried that he will hurt other individuals and spotted the farmer's market and noticed a tree line.  J.F. decided to go and crash into the tree line.  J.F. approached the farmer's market at a speed of approximately 55 mph, which is 10 mph above the speed limit.  As J.F. slowed down to turn into the farmer's market, Harsha continued to follow closely and collided with the driver's side of J.F.'s vehicle, pushing the passenger side into the tree line.  The impact caused J.F's passenger side to be crushed up against the trees.

{¶22} By J.F.'s testimony, Harsha collided with him three times, twice rear-ending him and once straight into the driver side.  J.F.'s assertions of what happened was supported by the State's exhibits.  This includes photos of his vehicle in which his rear bumper and trunk were crushed in and the bumper was falling off.  The surveillance video from the farmer's market showed J.F.'s vehicle turning into the market and head to the tree line, and, right behind him, is Harsha's car going full speed into J.F.'s car.  J.F. got out of his vehicle right away and approached the people at the nearby gas pumps.  He testified he did that because he was afraid.  Harsha exited her vehicle but went right back in and left the scene.

**{¶23}** The evidence additionally included Harsha's threats after colliding with J.F. This included voicemails she left for J.F. threatening him that he needs to go into the witness protection program, and that he needs to leave or things will get worse. Harsha also sent messages to J.F.'s sister informing the sister that she needs to get J.F. out of here before things get bad for him.

**{¶24}** Therefore, as we review the totality-of-the-circumstances, we find that the evidence established that Harsha, with the use of her vehicle, knowingly collided with J.F. and caused him physical harm. Accordingly, the jury did not lose its way in finding Harsha guilty of felonious assault. We, thus, overrule Harsha's first assignment of error.

SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING A LAY WITNESS TO GIVE HIS OPINION ON THE ULTIMATE ISSUE THAT WAS TO BE DECIDED BY THE JURY.

**{¶25}** In the second assignment of error, Harsha argues that the trial court committed plain error by allowing Trooper Boetcher to testify regarding her intent during the accident. Harsha maintains that the trooper's testimony was that of a lay witness and it was improper to allow him to give his opinion on Harsha's state of mind during the accident, in which the trooper testified that her actions were done intentionally. Harsha continues to contend that the trooper's testimony pertained to the ultimate question that the jury was required to answer and it was improper to allow the trooper to give his opinion. Thus, pursuant to Evid. R. 704, the factual question of Harsha's intent should have been left to the jury to determine, not the lay testimony of the trooper.

**{¶26}** The State in response maintains there was no error in the trooper's testimony, and, even if there was, it did not affect the outcome of the case. This is because other evidence was presented demonstrating that Harsha's conduct was intentional, including J.F.'s testimony, the messages Harsha sent threatening J.F. and his sister, and the video of the final collision. Thus, the trooper's testimony was cumulative and Harsha cannot meet her burden in demonstrating plain error occurred.

Law and analysis

**{¶27}** Trooper Boetcher was the State's third and final witness at trial. He testified that he has been a trooper with the State Highway Patrol Office and has investigated approximately 1000 car accidents. In investigating the final collision between Harsha and J.F., the trooper photographed both vehicles, obtained the surveillance video from the farmer's market, and contacted both Harsha and J.F. Trooper Boetcher was the primary investigator of the collision and testified to his observations: "no heavy breaking leading up to where the red vehicle was. I observed tire marks and then the red vehicle at final rest up against tree with heavy right side and rearend damage." The trooper on direct examination, testified that after obtaining the surveillance video from the farmer's market and reviewing it:

> [J.F.]'s vehicle is traveling fast. I don't know the exact speed. We did not do a speed analysis on it, but he's traveling abnormally fast for the area, with a second vehicle, Ms. Harsha's vehicle, directly behind it. The[y] both leave the roadway and then [J.F.'s] vehicle begins to slow and that's when Ms. Harsha's vehicle strikes the rear of [J.F.]'s vehicle. Both, forcefully, then - - well, she forcefully - - her vehicle forcefully struck his vehicle into the tree. There was several

different directions the white buick could have gone to avoid striking the red sonata.

. . .

It just merely continuing the same direction on U.S. 50 and not entering the same parking lot would have avoided the crash.

**{¶28}** The prosecutor then asked the trooper: "Now, the fact that it wasn't avoided, what did that indicate to you?" Trooper Boetcher responded: "It appears through everything, that it's intentional."

**{¶29}** During his cross-examination, Harsha's counsel questioned the trooper whether he agreed that "not every collision is intentional[.]" The trooper agreed that there are a lot of factors that can be the cause of a collision. Additionally, the trooper also agreed that it is possible that collisions cannot be avoided.

**{¶30}** The trooper was questioned during redirect examination whether speeding or distracted driving was the cause of the accident and he said no. He testified, however, that he cannot rule out impaired driving as a factor. But he stated that in his opinion this was an avoidable collision. The redirect examination concluded with the prosecution asking: "And was there any question in your mind as to whether this was an intentional act on the part of the defendant?" He responded: "No[.]"

**{¶31}** We agree with Harsha under this assignment of error that Trooper Boetcher was not classified as an expert witness and the prosecution twice questioned him as to her mental state during the accident. We disagree, however, that this was plain error and warrants reversal of her conviction.

**{¶32}** The State has the burden to establish the elements of felonious assault, which include the mental state that Harsha "knowingly" caused J.F. physical harm using her vehicle. *See* R.C. 2903.11(A)(2). Thus, the mental state was an issue that the jury was required to determine.

**{¶33}** Evid.R. 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Harsha asserts that the trooper's testimony was not admissible since he was not classified as an expert and his testimony went beyond what is permissible under the lay witness standard pursuant to Evid. R. 701. That rule provides that

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Evid.R. 701.

**{¶34}** "Ohio courts generally agree that a law enforcement officer may offer lay testimony 'concerning matters that are within [the officer's] experience and observations' if otherwise admissible under Evid.R. 701." *State v. Platt*, 2024-Ohio-1330, ¶ 80 (4th Dist.), quoting *State v. Jones*, 2015-Ohio-4116, ¶ 108 (2d Dist.). Harsha contends that the trooper did not personally perceive the accident, thus, he could not give an opinion on the cause of the accident due to lack of personal knowledge. And, in support of her argument, she cites to the Second District Court of Appeals decision in *State v. Hall*, 2004-Ohio-663 (2d Dist.). Her reliance on the case is misplaced and, to the contrary, the Second

District's decision supports our conclusion that Trooper Boetcher's testimony did not affect the outcome of the case.

{¶35} In *Hall*, two officers investigated a fatal accident and testified as to their opinion regarding the cause of the accident – Hall improperly merged onto I-70 from I-75 by failing to proceed on the access ramp lane and instead drove directly to the left lane in front of the other vehicle. *Id*. at ¶ 4, 5, 12. During the testimony of one of the officers, Hall made a general objection, but the trial court overruled the objection and permitted the officer to testify as to the cause of the accident. The Second District held that "the cause of the accident was a matter retrospective to those facts. Lacking personal knowledge of the cause of the accident, Trooper Salemme was not competent to state an opinion concerning its cause." *Id*. at ¶ 9. However, because Hall's general objection was not based on specific grounds pursuant to Evid.R. 103(A)(1), the Second District found no error in admitting the testimony.

{¶36} Further, even though Hall made a specific objection as to the second officer's testimony, nonetheless, the Second District found the testimony harmless because it was cumulative to the testimony of the first officer's testimony and upheld Hall's conviction:

> Evid.R. 704 permits testimony on the ultimate issue, which was the basis of the objection Defendant-Appellant posed, so long as the evidence is "otherwise admissible." Sgt. Widmyer's testimony concerning his opinion was inadmissible. Therefore, and unlike Defendant-Appellant's general objection to the question posed to Trooper Salemme, his objection to the question posed to Sgt. Widmyer presented the court with grounds sufficient to rule on its admissibility.

Having said that, we nevertheless find that any error in permitting Sgt. Widmyer to testify as he did was harmless beyond a reasonable doubt.

Sgt. Widmyer's testimony was cumulative to Trooper Salemme's. Both testified that Defendant-Appellant forced [victim's] vehicle off the road when Defendant-Appellant pulled directly into the lane in which [the victim] was traveling. Neither opined that Defendant-Appellant had acted recklessly, which was an ultimate finding the jury was required to make with respect to the three moving violation changes.

[Victim]'s testimony was consistent with the two officers'. Indeed, so was Defendant-Appellant's own testimony. He added only that he had looked over his left shoulder before he entered the lane in which [the victim] was traveling, but didn't see [the victim] before he pulled into that lane, and first saw [the victim] only when his car was in the grassy median.

*Id*. at ¶ 14-17.

{¶37} In the matter at bar, we first note that Trooper Boetcher's testimony was based on his perception of the accident as depicted in the surveillance video, which is permissible. *See State v. Hicks*, 2025-Ohio-2223, ¶ 51 (8th Dist.) (upholding the admission of the opinion of witnesses based on their perception of the authenticated surveillance video and still photographs.); *see also State v. Ladson*, 2022-Ohio-3670, ¶ 46 (8th Dist.) (the testimony of the lead detective as to the contents of the surveillance footage and identifying the defendant did not violate Evid.R. 701.); *see also State v. Hill*, 2016-Ohio-4762, ¶ 74 (10th Dist.) (admission of the testimony of the detective's testimony as to the identity of the suspect in the robberies based on his review of the video and photographs was not plain error.).

{¶38} Moreover, like the defendant in *Hall*, Harsha cannot meet her burden that the admission of Trooper Boetcher's testimony in response to two questions affected the outcome of the case. Harsha did not object to Trooper

Boetcher's responses, thus, we are reviewing the issue under the plain error

standard of review.  "The burden of demonstrating plain error is on the party

asserting it."  *State v. Quarterman*, 2014-Ohio-4034, ¶ 16.  "Plain errors or

defects affecting substantial rights may be noticed although they were not

brought to the attention of the court."  Crim.R. 52(B).

**{¶39}** In order to establish plain error, Harsha "must show that (1) there

was an error or deviation from a legal rule, (2) the error was plain and obvious,

and (3) the error affected the outcome of the trial."  *State v. Mohamed*, 2017-

Ohio-7468, ¶ 26, citing *State v. Barnes*, 2002-Ohio-68, ¶ 27.  "Notice of plain

error under Crim.R. 52(B) is to be taken with the utmost caution, under

exceptional circumstances and only to prevent a manifest miscarriage of justice."

*State v. Long*, 53 Ohio St.2d 91, 97 (1978).  A "substantial right" is a "right that

the United States Constitution, the Ohio Constitution, a statute, the common law,

or a rule of procedure entitles a person to enforce or protect."  R.C.

2505.02(A)(1).

**{¶40}** We find that Trooper Boetcher's two responses that Harsha's

conduct was intentional did not affect the outcome of the case.[1]  As demonstrated

in the first assignment of error, prior to Trooper Boetcher's testimony, the State

presented the testimony of J.F., his sister, the threats Harsha sent, and played

the surveillance video from the farmer's market that depicted the third collision.

J.F. testified that Harsha made a U-turn as soon as she saw him on the road and

rear-ended him twice before the final collision in which she rammed him into a

---

[1] Trooper Boetcher's testimony was at the conclusion of the first day of trial and covered approximately 43 pages.

tree line.  And after this collision, she called and left him threatening messages that it will get worse if he did not leave town.  Harsha also contacted J.F.'s sister and continued to threaten J.F.  This evidence alone demonstrates that Harsha's conduct on May 4th was intentional and supports the jury's finding of guilt.

{¶41} Harsha's second assignment of error is overruled as she fails to meet her burden in demonstrating plain error.

### THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF MS. HARSHA'S SIXTH AMENDMENT RIGHTS BY ENTERING JUDGMENT OF CONVICTION AFTER A TRIAL AT WHICH SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR HE[R] DEFENSE.

{¶42} In the third assignment of error, Harsha argues that she received ineffective assistance of counsel for his failure to object to Trooper Boetcher's testimony as a lay witness as to Harsha's conduct being intentional and the speed the vehicles were travelling.  Harsha also contends that her trial counsel was ineffective for failing to object to hearsay statements that were admitted during the trooper's testimony of his interaction with the owner of Dickey's Barbeque regarding Harsha's mental state.  Finally, Harsha asserts that her trial counsel failed to object to prosecutorial misconduct that occurred during the State's closing argument.  Harsha maintains that she was prejudiced by her trial counsel's ineffective representation, and her conviction should be reversed.

{¶43} In response, the State argues that it was trial strategy not to object to the trooper's testimony of Harsha's conduct as intentional and not an accident.  Harsha's trial counsel questioned the trooper during cross-examination that accidents occur and cannot be avoided.  Additionally, the State asserts that the

trooper's testimony regarding the speed of the vehicles was not erroneous and was cumulative to J.F.'s testimony of his rate of speed and as exhibited by the admitted farmer's market video. Similarly, the State contends that the evidence that Harsha complains of as being hearsay was cumulative to other evidence. This includes her own statements that someone else was driving her car and her relationship with J.F. Therefore, the State maintains that none of Harsha's arguments rise to the level of prejudice to warrant reversal as the evidence of her guilt was overwhelming. Finally, as to the prosecutorial misconduct, the State argues that Harsha cannot establish misconduct as the trial court preemptively intervened before any misconduct was committed. Thus, Harsha's trial counsel did not have to object.

Law and analysis

{¶44} To demonstrate ineffective assistance of counsel, Harsha "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 2011-Ohio-3641, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1988), paragraph two of the syllabus. Failure to demonstrate either prong of this test "is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.), citing *Strickland*.

{¶45} Harsha "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶

62, citing *State v. Calhoun*, 1999-Ohio-102, ¶ 62, citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299 (1965). "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance." *Id.*, citing *State v. Davis*, 133 Ohio App.3d 511, 516 (8th Dist.1999). To demonstrate prejudice, Harsha "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶46} Additionally, "[a] trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Teets*, 2017-Ohio-7372, ¶ 71 (4th Dist.), citing *State v. Roby*, 2010-Ohio-1498, ¶ 44 (3d Dist.).

A. Trooper Boetcher's testimony as to Harsha's collision being intentional

{¶47} In the second assignment of error, Harsha asserted that the trial court committed plain error in permitting Trooper Boetcher to answer the State's questions about whether Harsha's conduct was intentional. We disagreed and found that the admission was not erroneous and did not affect the outcome of the case. We similarly conclude here that Harsha fails to demonstrate she was prejudiced by the admission of Trooper Boetcher's testimony. The evidence presented prior to the trooper's testimony demonstrated that Harsha collided with J.F. intentionally three times. And, after the final collision, in which she rammed J.F.'s vehicle into the tree line, Harsha threatened to cause further harm to J.F.

The final collision was recorded on a surveillance video.  In the video, Harsha can be seen closely following J.F. at a high rate of speed and hit his vehicle and ramming him into a tree line.

{¶48} Accordingly, we find that Harsha cannot demonstrate that her counsel was ineffective and that she was prejudiced.  We thus, overrule this argument.

### B.  Trooper Boetcher's testimony as to speed

{¶49} Under this argument, Harsha maintains that her trial counsel was ineffective for failing to object to the trooper's testimony that based on his review of the surveillance video, Harsha and J.F. were driving at a speed above the speed limit, and, additionally, for failing to object to the trooper's testimony that speed was not a factor in the third and final collision.  We overrule this argument as Harsha fails to meet her burden that her trial counsel's decision was not trial strategy, and, further, she fails to demonstrate prejudice.

{¶50} Trooper Boetcher was the State's third and final witness.  Prior to his testimony, was J.F.'s testimony.  J.F. testified that after Harsha rear-ended him the first time, he sped up and was trying to escape.  And, after the second time Harsha rear-ended him, he decided he needed to find a place to crash so no one else would be hurt.  He saw the tree line at the farmer's market and decided to go there.  He testified that at this point, which was within the surveillance video frame, he was at an approximate speed of 55 mph, which is 10 mph above the speed limit.  Thus, the trooper's testimony was cumulative to J.F.'s testimony.  Accordingly, Harsha cannot demonstrate prejudice as the jury heard directly from

J.F. of the speeds he was driving.  Additionally, J.F. testified that Harsha collided with him twice prior and was chasing him, and she threatened him after the collision.  All of which demonstrate Harsha intentionally collided with J.F. regardless of the trooper's testimony.

### C.  Trooper Boetcher's testimony - Hearsay

{¶51} Under this argument, Harsha asserts that her trial counsel was ineffective for failing to object to the Trooper's conversation with Bower, the owner of Dickey's Barbeque.  The trooper's testimony was during the State's direct examination when the trooper was explaining his steps of investigating the collision.  While in route to the collision site, dispatch informed the trooper that Harsha called in and reported her car was stolen from Dickey's Barbeque.  When dispatch reached back to Harsha, she indicated she left Dickey's Barbeque.  The trooper still went to Dickey's Barbeque and spoke to the owner, Bower, and the trooper informed Bower why he was there—to investigate Harsha's claim that her vehicle was stolen.  In his testimony, the trooper recounted that Bower told him that Harsha was in and out that day and

> explained to me that she is going through a tough time with her relationship and whatnot.  I explained to him that her vehicle and another vehicle, [J.F.]'s vehicle, was involved in a crash, because he was referring to her and [J.F.].  That they were involved in a crash together, her and both vehicles and, Mr. Bower attempted to show me video, but stated that his video system was currently not working at the time.

{¶52} The trooper continued that while he was at Dickey's Barbeque, Harsha called in and talked to Bower on the phone while the trooper was standing with Bower.  From his testimony, it seems that the trooper could hear

the conversation because he testified that Harsha did not say anything about her car being stolen. But she did tell Bower the vehicles were involved in a crash. The trooper then stated that "Mr. Bower went on to advise me her state of mind and whatnot."

{¶53} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). A "statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). And a "declarant" is "a person who makes a statement." Evid.R. 801(B).

> Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

Evid.R. 802.

{¶54} First, Harsha's argument fails because out-of-court statements that explain law enforcement officers' next investigatory steps are not generally hearsay. *State v. Russell*, 2022-Ohio-1746, ¶ 96 (4th Dist.), citing *State v. Beasley*, 2018-Ohio-493, ¶ 172. "A law-enforcement officer can testify about a declarant's out-of-court statement for the nonhearsay purpose of explaining the next investigative step." *State v. McKelton*, 2016-Ohio-5735, ¶ 186, citing *State v. Thomas,* 61 Ohio St.2d 223, 232 (1980). And here, the statement was not admitted for the truth of the matter asserted.

**{¶55}** Second, Bower's statement that Harsha had relationship issues and was in a collision with J.F., is cumulative to evidence already admitted.  Pursuant to Crim.R. 52(A), harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  " 'Where other admissible evidence mirrors improper hearsay, the error in allowing the hearsay is generally deemed harmless, since it would not have changed the outcome of the trial.' "  *State v. Gibbs*, 2024-Ohio-6125, ¶ 47 (5th Dist.), quoting State *v. Williams*, 2017-Ohio-8898, ¶ 17 (1st Dist.); *see also State v. Jeffers*, 2009-Ohio-1672, ¶ 19 (4th Dist.) ("even if we assume for purposes of argument that the statements' admission constitutes error, we do not believe that such error constitutes reversible error.").

**{¶56}** J.F. testified that he and Harsha had relationship issues and he broke it off, and, the day of the collisions, he informed her that he was blocking her.  What is more, Harsha spoke to J.F.'s sister and the sister testified that Harsha seemed unhinged, which was confirmed by her conduct of May 4th, and her subsequent threats.  Thus, when the trooper testified, J.F., his sister, and the surveillance video of the final collision was previously presented to the jury.  Accordingly, Harsha cannot meet her burden in demonstrating prejudice and we overrule this argument.

### D.  Failure to object to prosecutorial misconduct

**{¶57}** Under this argument, Harsha contends that her trial counsel was ineffective for failing to object to misconduct the prosecutor committed during closing argument.  We find no merit to this argument.

**{¶58}** In assessing prosecutorial misconduct in closing arguments, the question is " 'whether the remarks were improper and, if so, whether they prejudicially affected [the] substantial rights of the defendant.' " *State v. Hessler*, 90 Ohio St.3d 108, 125 (2000), quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). A "substantial right" is a "right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).

**{¶59}** During the State's closing argument, the prosecutor stated:

> She didn't veer off, she didn't go either way, she made the choice. Like she said, she made the choice. Those - - that was a voluntary choice. Ladies and gentlemen. She took her motor vehicle and caused or attempted to cause physical harm to [J.F.] that day. Not only that, she continued the harassment. She continued the harassment, you will see the text messages. Please read those. [N.F.] testified to you. She lives in the State of Delaware. Her brother is here. She reached out and contacted Trooper Boetcher and said, "this is what I am getting from her. Please do something." She was afraid for her brother's life. She was scared for him. She testified to you and told you that. *I have a brother. I can understand that. If you have siblings*[.] (Emphasis added).

**{¶60}** The trial court interrupted and requested that counsel approach the bench. The prosecutor informed the trial court that "I didn't put them in[.]" But the trial court interrupted again:

> you are coming dangerously close to prosecutorial misconduct by raising issue of your own family members and asking them to consider their family members and although there was no objection was raised, I am advising you to proceed very cautiously from this point. Do you understand me?

**{¶61}** The prosecutor responded "I do. Very clearly, sir." From the record, we ascertain that Harsha is arguing that the prosecutor violated the "golden-rule."

The

> Golden-rule arguments . . . implore the jury to " ' "place themselves in the position of a party to the cause * * * are usually improper, and reversibly erroneous." ' " *State v. Ross*, 2d Dist. Montgomery No. 22958, 2010-Ohio-843, 2010 WL 761323, ¶ 126, quoting *State v. Southall*, 5th Dist. Stark No. 2008 CA 00105, 2009-Ohio-768, 2009 WL 418751, ¶ 112. As this court has explained, golden-rule arguments are, in essence, "a request by the prosecutor that the jury accord a defendant the same treatment that the defendant accorded his victim." *State v. Hairston*, 1st Dist. Hamilton No. C-830127, 1984 WL 4184 (Jan. 18, 1984). By asking the jury to step into the shoes of the victim, the state is "essentially seek[ing] to have the jury abandon their position of impartiality." *State v. Ford*, 2d Dist. Clark No. 2005-CA-76, 2006-Ohio-2108, 2006 WL 1120512, ¶ 38.

*State v. Shelton*, 2023-Ohio-2458, ¶ 14 (1st Dist.), *appeal not allowed*, 2024-Ohio-163, ¶ 14.

{¶62} In the matter at bar, we find no golden-rule violation. The prosecutor during closing arguments stated that J.F.'s sister was scared for her brother. The prosecutor started to argue that she too has a sibling and stated "If you have siblings[.]" Nothing further was said by the prosecutor because the trial court interrupted and informed the prosecutor to move on, which the prosecutor did. Accordingly, Harsha cannot demonstrate any prosecutorial misconduct occurred that required her trial counsel to object. The trial court stopped the prosecution's closing arguments before any misconduct occurred.

{¶63} We reiterate that the evidence in the case at bar, as previously outlined in the first assignment of error, supports Harsha's conviction of felonious assault. The evidence presented prior to the trooper's testimony and the State's closing arguments included J.F.'s testimony, photos of both vehicles with their extensive damage, and the surveillance video of the final collision. Moreover, the

trial court instructed the jury that closing arguments are not evidence, and the "jury is presumed to follow the instructions given to it by the trial judge."  *State v. Loza*, 71 Ohio St. 3d 61, 75 (1994).

{¶64} Accordingly, Harsha's third assignment of error is overruled. Harsha fails to meet her burden in demonstrating that her trial counsel's representation was not based on trial strategy and/or that she was prejudiced by counsel's representation.

FOURTH ASSIGNMENT OF ERROR

THE CUMULATIVE EFFECT OF COUNSEL'S ERRORS DENIED MS. HARSHA A FAIR TRIAL AND RENDERED THEIR ASSISTANCE INEFFECTIVE.

{¶65} In the fourth assignment of error, Harsha argues that considering all of the errors her trial counsel committed as a whole, the errors were not harmless, but, rather, they were prejudicial and she is entitled to a new trial.

{¶66} The State in response argues that Harsha has failed to demonstrate any error, let alone cumulative error.

Law and analysis

{¶67} "Under the cumulative-error doctrine, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.' "  *State v. Knuff*, 2024-Ohio-902, ¶ 288, quoting *State v. Powell*, 2012-Ohio-2577, ¶ 223.  Before a reviewing court can find cumulative error, "it must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately

harmless errors." *State v. Ward*, 2007-Ohio-2531, ¶ 49 (4th Dist.), citing *State v. Thomas*, 2001 WL 1103328 (2d Dist. Sept. 21, 2001).

**{¶68}** Harsha cannot meet her burden in demonstrating that the cumulative error doctrine applies. This is because Harsha received a fair trial, failed to establish "numerous instances of trial-court error[,]" and she was not prejudiced by any of the errors she asserted. *See State v. Maxwell*, 2014-Ohio-1019, ¶ 253.

**{¶69}** Accordingly, we overrule Harsha's fourth assignment of error.

FIFTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF MS. HARSHA BY FAILING TO COMPLY WITH THE SENTENCING REQUIREMENTS CONTAINED IN R.C. 2929.19(B)(2)(c).

**{¶70}** In the fifth assignment of error, Harsha maintains that her sentence was contrary to law because the trial court failed to notify her of the required indefinite sentence notifications pursuant to R.C. 2929.19(B)(2)(c). The trial court failed to orally provide the notifications at sentencing and failed to incorporate them in the sentencing entry.

**{¶71}** The State concedes the error and maintains that the matter should be remanded for resentencing.

Law and analysis

**{¶72}** We must review Harsha's sentence pursuant to the dictates of R.C. 2953.08(G). *See State v. Marcum*, 2016-Ohio-1002, ¶ 16. Pursuant to R.C. 2953.08(G)(2)(b), an

> appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the

sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

> . . .

(b) That the sentence is otherwise contrary to law.

**{¶73}** "Effective March 22, 2019, the Reagan Tokes Law established indefinite-sentencing provisions for people convicted of non-life-sentence felony offenses of the first or second degree." *State v. Maddox,* 2022-Ohio-764, ¶ 4. Harsha was sentenced to an indefinite prison term and pursuant to R.C. 2929.19(B)(2)(c), the trial court was required to notify her at the sentencing hearing of all of the following:

> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;
> (ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;
> (iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;
> (iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;
> (v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the

sentence, the offender must be released upon the expiration of that term.

R.C. 2929.19(B)(2)(c)(i), (ii), (iii), (iv) & (v).

**{¶74}** In the matter at bar, the trial court failed to notify Harsha of the mandatory notifications at the sentencing hearing. We previously held that a defendant's sentence is contrary to law when a trial court fails to inform a defendant of the mandatory Reagan Tokes' notifications pursuant to R.C. 2929.19(B)(2)(c). *See State v. Long*, 2021-Ohio-2672 (4th Dist.); *see also State v. Estep*, 2024-Ohio-58 (4th Dist.).

**{¶75}** Because the trial court failed to notify Harsha of the mandatory indefinite sentence notifications, we remand the matter to the trial court for Harsha to be resentenced. We also note that Harsha's conviction was based on her use of her vehicle as a deadly weapon, and pursuant to R.C. 2903.11(D), the trial court was required to impose a class two suspension of her driver's license.

**{¶76}** We, therefore, sustain Harsha's fifth assignment of error and remand the matter for resentencing.

CONCLUSION

**{¶77}** We affirm Harsha's felonious assault conviction but we remand the matter to the trial court for resentencing.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and the CAUSE IS REMANDED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**