[Cite as *State v. McCollum*, 2026-Ohio-393.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


STATE OF OHIO,                                   :

    Appellee,                                    :
                                          CASE NO. CA2025-07-019

vs.                                              :
                                          <u>OPINION AND</u>
                                          <u>JUDGMENT ENTRY</u>

TYREESE S. McCOLLUM,                             :
                                          2/9/2026

    Appellant.                                   :

                                                  :


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20250041


Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.


## **O P I N I O N**


**PIPER, P.J.**

{¶ 1} Appellant, Tyreese S. McCollum, appeals his conviction in the Fayette County Court of Common Pleas, where a jury found him guilty of felonious assault, discharging a firearm on a public roadway, and improper handling of a firearm while in a motor vehicle. For the reasons set forth below, we affirm McCollum's conviction.

**Facts and Procedural History**

{¶ 2} On April 4, 2025, the Fayette County Grand Jury returned a six-count indictment against McCollum. The six indicted charges were (1) first-degree felony attempted murder in violation of R.C. 2923.02(A) and 2903.02(A) and (D);[1] (2) second-degree felony felonious assault in violation of R.C. 2903.11(A)(2)/(D)(1)(a);[2] (3) third-degree felony having weapons while under disability in violation of R.C. 2923.13(A)(2)/(B); (4) third-degree felony discharging a firearm upon a public roadway in violation of R.C. 2923.162(A)(3) and (C)(2); (5) third-degree felony tampering with evidence in violation of R.C. 2921.12(A)(1)/(B); and (6) fourth-degree felony improper handling of a firearm while in a motor vehicle in violation of R.C. 2923.16(A).

{¶ 3} The charges stemmed from a road-rage incident between McCollum and the victim on the afternoon of February 6, 2025. The incident occurred while both McCollum and the victim were traveling northbound on I-71 from Greene County into Fayette County, Ohio. McCollum was arraigned on April 7, 2025, and entered a plea of not guilty to all six charges. After McCollum entered his not guilty plea, the trial court set McCollum's bond at $2,000,000 cash/surety.

{¶ 4} On July 10, 2025, a one-day jury trial was held on the matter. During the trial, the jury heard testimony from seven witnesses, including the victim. The victim testified that on February 6, 2025, he was driving his pickup truck northbound on a two-lane stretch of I-71 when he came up behind an SUV in the left lane traveling below the posted 70 mph speed limit. He further testified that, upon coming up behind the slower-moving SUV, he flashed his headlights at the SUV "for it to hopefully move over to the

---

1. This charge also included two attached specifications, one a firearm specification and the other a repeat violent offender specification.

2. This charge also included two attached specifications, one a firearm specification and the other a repeat violent offender specification.

right" and allow him to pass. The SUV did not move over. The victim testified that he then waited for an opportunity to overtake the SUV on the right, which took some time given that "everyone" else was also attempting to maneuver around the slower-moving SUV.

{¶ 5} The victim testified that after passing the SUV on the right and moving his pickup truck back into the left lane in front of the SUV, the SUV then "picked up speed and aggressively was trying to repass [him]" as he continued traveling northbound in the left-hand lane. The victim further testified that despite the SUV's attempts to pass him for several minutes by "swerving into the right lane and then over into the left berm," he did not permit the SUV to pass. The victim explained that he did so by "swerving left and right preventing it from being able to pass at that time."

{¶ 6} The victim testified that the SUV then "backed off" for approximately five minutes. The victim testified that after those five minutes had elapsed, and upon his return to the right-hand lane, the victim testified that he observed in his driver's-side mirror the SUV approaching him once again in the left lane. The victim testified that the SUV then passed him on the left, "[a]t which point, the passenger window was rolled down and a black individual had brandished a firearm."

{¶ 7} The victim testified that, upon seeing this individual pointing a firearm at him from approximately four or five feet away, he then watched as the man "racked" the gun in his left hand. The victim testified that he then "applied the brakes and, while doing so, that individual leaned and turned his torso around and fired approximately five shots at [him] with a black pistol handgun." When asked why he believed those five shots were fired at him rather than just up in the air as a warning, the victim testified that he "saw a muzzle pointed at [him]," that he "saw a muzzle flash," that the "fire [came] out of the end of the barrel," and that he "heard the firearm go off." The victim then testified and positively identified McCollum as the shooter.

{¶ 8}   The victim testified that, once the shooting had stopped, he called 9-1-1 to report the shooting and to provide police with the mile marker where the shooting had occurred. He further testified that he then stayed on the line with 9-1-1 until the police initiated a traffic stop of the SUV in question. The victim testified that he then pulled over approximately 100 feet behind the police cruiser that had initiated the traffic stop on the SUV. The victim testified that he then watched as the police pulled a Black man out of the SUV's front passenger-side door. He further testified that this man, the one he had just seen police pulling out of the SUV's front passenger-side door, was the same man that he had observed just a short time before, pointing a gun at him from approximately four to five feet away. There is no dispute that this man was McCollum.

{¶ 9}   The police later discovered a stolen firearm and several spent shell casings along the side of northbound I-71 in the area where the victim testified that the shooting had taken place. McCollum does not dispute that he had tossed the stolen firearm discovered by police out of the SUV's front passenger-side window sometime after the shooting was alleged to have occurred. The jury thereafter deliberated and returned a verdict finding McCollum not guilty of attempted murder but guilty of felonious assault, having weapons while under disability, discharging a firearm upon a public roadway, tampering with evidence, and improper handling of a firearm while in a motor vehicle. Upon polling the jury and accepting its verdicts, the trial court then scheduled the matter for sentencing.

{¶ 10}  On July 14, 2025, the trial court held that previously scheduled sentencing hearing. During that hearing, the court sentenced McCollum to a total aggregate term of 24 to 28 years in prison, 11 of which are mandatory, less 159 days of jail-time credit. The court also advised McCollum that he would be subject to a mandatory minimum term of 18 months to a maximum term of three years of postrelease control following his release

- 4 -

from prison. The following day, July 15, 2025, the court issued its judgment entry of conviction and sentence. McCollum then filed a notice of appeal. After the parties' briefing, on January 7, 2026, McCollum's appeal was submitted to this court for consideration. McCollum's appeal is now properly before this court for decision. To support his appeal, McCollum has raised one assignment of error for review.

**McCollum's Single Assignment of Error for Review**

{¶ 11} DEFENDANT-APPELLANT'S CONVICTIONS FOR FELONIOUS ASSAULT, DISCHARGE OF FIREARM-PUBLIC ROADWAY, AND IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} In his sole assignment of error, McCollum argues that the jury's verdicts finding him guilty of felonious assault, discharging a firearm on a public roadway, and improper handling of a firearm while in a motor vehicle are against the manifest weight of the evidence. We disagree.

{¶ 13} "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Knuff*, 2024-Ohio-902, ¶ 207. This is because, unlike the sufficiency-of-the-evidence standard of review, which addresses the State's burden of production, the manifest-weight-of-the-evidence standard of review applies to the State's burden of persuasion. *State v. Messenger*, 2022-Ohio-4562, ¶ 26. When determining whether a jury's verdict is against the manifest weight of the evidence, this court, sitting as the "thirteenth juror," first reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses who testified at trial. *State v. Brown*, 2025-Ohio-2804, ¶ 30.

{¶ 14} Following this review, we determine, in resolving any conflicts in the evidence, whether the jury clearly lost its way and created a manifest miscarriage of

justice that requires reversal of the jury's verdict and ordering a new trial. *State v. Jordan*, 2023-Ohio-3800, ¶ 17. Such a determination is rare, arising only in exceptional cases in which the evidence presented at trial weighs heavily against the jury's verdict. *State v. Nkoyi*, 2024-Ohio-3144, ¶ 41 (12th Dist.). This may occur only when there is unanimous disagreement with the jury's verdict. *See Jordan*, citing Ohio Constitution, Article IV, Section 3(B)(3) ("No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause.").

{¶ 15} As noted above, McCollum argues that the jury's verdicts finding him guilty of felonious assault, discharging a firearm upon a public roadway, and improper handling of a firearm while in a motor vehicle are against the manifest weight of the evidence. This is because, according to McCollum, the record is devoid of any "hard evidence" proving that he ever discharged a firearm at the victim in this case. To support this claim, McCollum notes that neither the victim nor the victim's pickup truck was struck by any of the five bullets he was alleged to have fired at the victim from "almost" point-blank range. McCollum also argues that although gunshot residue was found on his left hand, that does not necessarily mean he was "the one who fired a firearm at the pickup." McCollum instead argues that, despite the absence of any supporting evidence in the record, the positive test result may have been caused by his touching something near a recently discharged firearm shortly before the testing of his hands had occurred.

{¶ 16} McCollum further argues that, even if he had discharged a firearm at the victim, as the victim alleged, it is "unlikely" that he would have done so with "only his left hand." He contends that he would have instead used both hands. McCollum argues that this would have resulted in gunshot residue being found on both his left and right hands if he had "fired five shots right next to the pickup." This is in addition to McCollum arguing that the jury verdicts are against the manifest weight of the evidence because the record

- 6 -

contains "little corroboration" of the victim's trial testimony positively identifying him as the shooter. Therefore, although he admits to having discarded the stolen firearm that was later discovered by police, rather than this being his attempt to get rid of evidence, McCollum argues that "it is just as likely that [he] threw [the] stolen handgun out of the auto's window" because he "did not want to be found with a weapon in his possession while he was under a disability."

{¶ 17} We find no merit in any of McCollum's arguments, whether considered individually or collectively. Instead, we find that the record contains overwhelming competent and credible evidence supporting the jury's verdicts finding him guilty of felonious assault, discharging a firearm upon a public roadway, and improper handling of a firearm while in a motor vehicle. This includes the victim's testimony that he saw McCollum brandish and then point a gun directly at him from approximately four to five feet away. It also includes the victim's testimony that, after McCollum "racked" the gun in his left hand, McCollum then fired the gun at him between four and five times. Given its verdict, the jury clearly found the victim's testimony credible. This was not error for it is well established that "a verdict is not against the manifest weight of the evidence simply because the jury believed the State's witnesses." *State v. Harsha*, 2025-Ohio-4611, ¶ 20 (4th Dist.).

{¶ 18} In so holding, we note that, despite McCollum's assertions to the contrary, the fact that neither the victim nor the victim's pickup truck was struck during the shooting does not mean that no shooting occurred. It also does not mean that the jury's verdicts are against the manifest weight of the evidence. The jury's verdicts are likewise not against the manifest weight of the evidence simply because gunshot residue was found only on McCollum's left hand. That finding simply means that, given the jury's verdict, the jury found the victim's testimony that McCollum had shot at him with his left hand credible.

- 7 -

This was well within the jury's purview as the trier of fact and the ultimate factfinder, *State v. Eads*, 2025-Ohio-2815, ¶ 10, for it is well established that "the decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Bedsole*, 2022-Ohio-3693, ¶ 35 (12th Dist.). Therefore, because this is not one of those exceptionally rare cases where extraordinary circumstances would lead this court to question the legitimacy of the jury's verdicts, McCollum's single assignment of error lacks merit and is overruled.

## Conclusion

{¶ 19} For the reasons outlined above, McCollum's appeal of the jury's verdicts finding him guilty of felonious assault, discharging a firearm on a public roadway, and improper handling of a firearm while in a motor vehicle is denied.

{¶ 20} Judgment affirmed.

M. POWELL and SIEBERT, JJ., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge