[Cite as *State v. Archie*, 2025-Ohio-5577.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-L-025 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DEANGELO ARCHIE, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 000966 |

## OPINION AND JUDGMENT ENTRY

Decided: December 15, 2025
Judgment: Affirmed

*Charles E. Coulson,* Lake County Prosecutor, and *Kristi L. Winner,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Cory R. Hinton,* Hanahan & Hinton, L.L.C., 7351 Center Street, Suite 1, Mentor, OH 44060 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Defendant-appellant, Deangelo Archie ("Archie"), appeals from the judgment of the Lake County Court of Common Pleas sentencing him to an aggregate prison term of 36 months as a result of his convictions of illegal conveyance of drugs of abuse onto the grounds of a specified governmental facility and trafficking in a fentanyl-related compound, aggravated trafficking in drugs, and possession of a fentanyl-related compound. For the following reasons, we affirm.

{¶2} On appeal, Archie asserts that insufficient evidence was presented to support his convictions and that his convictions are against the manifest weight of the

evidence. Archie also asserts on appeal that the sentences imposed by the trial court are contrary to law.

{¶3} Upon review, we conclude that Archie's convictions are not against the weight of the evidence. As such, Archie's convictions are necessarily supported by sufficient evidence. Testimony showed that Archie was provided illegal drugs for the purposes of conveying those drugs into the Lake Couty Jail. Archie coordinated with inmates inside the facility. The inmates threaded a rope consisting of shredded bed sheets through a small opening between the bricks and the window of Cell 5 on Range 4-C of the jail. The drugs Archie supplied resulted in the overdose of an inmate. Further, the court below expressly stated that it considered the purposes and principles of sentencing and the recidivism and seriousness factors. Archie's sentences are within the statutory guidelines. Thus, Archie's sentences are consistent with, and not contrary to, law.

{¶4} As none of Archie's assignments of error are meritorious, the judgment of the Lake County Court of Common Pleas is affirmed.

### Substantive and Procedural Facts

{¶5} On August 12, 2024, the Lake County Grand Jury, by secret indictment, charged Archie with three offenses: illegal conveyance of drugs of abuse onto the grounds of a specified governmental facility, a felony of the third degree, in violation of R.C. 2921.36(A)(2) ("Count 1"); trafficking in a fentanyl-related compound, a felony of the fifth degree, in violation of R.C. 2925.03(A)(2) ("Count 2"); and possession of a fentanyl-related compound, a felony of the fifth degree, in violation of R.C. 2925.11 ("Count 3").

{¶6} On October 30, 2024, Archie was arrested on the indictment. Archie waived his right to be present at the arraignment, and the trial court entered not guilty pleas to the charges. Bond was set at $10,000 cash or surety or 10 percent.

{¶7} The case was originally scheduled for a jury trial on January 21, 2025. On January 10, 2025, a hearing was held on Archie's motion to waive a jury trial.[1] The trial court granted the motion and converted the scheduled jury trial to a bench trial.

{¶8} On January 14, 2025, the State filed a motion seeking the admissibility of T-Mobile records. The State asserted that it intended to introduce the records pursuant to Evid.R. 902(11), Evid.R. 902(13), and/or Evid.R. 803(6). Archie opposed the motion on January 21, 2025.[2] On the day of the bench trial, Archie also filed a motion in limine requesting an order prohibiting the State from presenting recordings of jail calls containing hearsay statements made by individuals other than Archie. The State argued that the jail calls would be admissible as non-hearsay under Evid.R. 801(D)(2) as statements made by co-conspirators. The trial court determined that before the phone calls were admissible, the State would need to establish that the statements were made during the course of and in furtherance of a conspiracy and present independent proof of the conspiracy. (Dkt. 74, Trial Transcript, T.p. p. 12).

{¶9} A bench trial commenced on January 21, 2025. The following facts were presented at trial:

{¶10} On March 22, 2023, an inmate, Joshua Brown, was housed in Cell 5 of Range 4-C. Range 4-C was located on the fourth floor of the jail and was one of several

---

1. No written motion appears in the record.
2. The trial court granted this motion on the first day of trial and a judgment entry memorializing the decision was filed on January 22, 2025. (Dkt. 74, Trial Transcript, T.p. p. 6).

Case No. 2025-L-025

designated groups of cells, or ranges, on the floor. Each range generally consisted of twelve cells and a common area. Range 4-C also had two phones in the common area. After 11:00 p.m. on March 22, 2023, Brown experienced a medical emergency due to a drug overdose. Narcan was administered to Brown to reverse the effects of the drugs. As a result of the overdose in the jail, Detective Steven Ross of the Lake County Sheriff's Office ("Detective Ross") was assigned to investigate the incident. Detective Ross testified that the sheriff's office can view cameras inside of the jail as well as review inmate text messages, video visits, mail, and phone calls. The sheriff's office keeps records of those communications and video surveillance.

{¶11} On the evening of March 21, 2023, the day before Brown's overdose, an inmate, Shannon Hinton ("Hinton"), called his girlfriend, Demetria Stewart ("Stewart") from jail and asked her to call Archie. (State's Exhibit 11, clip one). Hinton provided Stewart with Archie's phone number. When Archie joined the call, Hinton told Archie that there was a hole in the wall of one of the jail cells and that he had a job for Archie. Hinton instructed Archie to go to the back of the jail building and wait for a signal to get the rope. Hinton instructed Archie that he would also need duct tape. However, Hinton and Stewart were unable to set up a ride for Archie on March 21, 2023, so the plan was delayed until the following day, March 22, 2023. Stewart set up a ride for Archie and obtained the drugs.

{¶12} During the course of Detective Ross's investigation, he reviewed video surveillance footage of the hours leading up to Brown's overdose. Specifically, Detective Ross reviewed footage of Range 4-C and the exterior of the jail. In the video of Range 4-C, prior to Brown's overdose, Detective Ross testified that numerous inmates were going in and out of Brown's cell ("Cell 5"). Several inmates were also seen in the common

Case No. 2025-L-025

area. One inmate, later identified as Hinton, could be seen making several trips to the phone in the common area and to Cell 5 in the hours leading up to Brown's overdose. At approximately 8:07 p.m., Hinton called Stewart regarding the preparations for Archie's delivery. (State's Exhibit 11, clip 2). During this call, Stewart initiated a three-way call with Archie. Hinton told Archie "that little box will kill you" and provided him with explicit instructions to tape the package "flat to the line."

{¶13} At approximately 8:30 p.m., Brown was observed speaking on one of the range phones located against the wall in the common area. Two other inmates, Hinton and Eric Ruscin ("Ruscin") were also seen in the common area of the range. Two jail cells, identified as Cells 5 and 6, were visible in the background of the video. Approximately 15 minutes later, Hinton sat down near one of the phones to make a call. During the next 30 minutes, Hinton and Ruscin entered Cell 5 numerous times and a blanket was used to cover the window of the cell's door. When a corrections officer walked into the range, Hinton appeared to divert the officer's attention away from Cell 5.

{¶14} Detective Ross testified that there was concentrated movement on the right side of Cell 5 in the video. At some point, the video showed Ruscin obtaining a dustpan and broom before returning to Cell 5. Ruscin was then observed sweeping an area near Cell 5. At one point in the video, the dustpan appeared visibly smaller. At certain times in the video, as many as three inmates were inside Cell 5.

{¶15} At approximately 10:11 p.m., Brown was seen sitting at a card table with Ruscin and another inmate in the common area. A few minutes later, Hinton and Ruscin returned to the phone. Ruscin used his PIN number to make a phone call. After Ruscin, Hinton placed a phone call using Ruscin's PIN. The phone call lasted approximately 14

Case No. 2025-L-025

minutes. (State's Exhibit 11, clip 3). The phone records reflect that the call was placed to Stewart. At Hinton's request, Stewart initiated a three-way call with Archie. Hinton first inquired if Archie could see the line. Archie then told Hinton that he was still enroute to the jail. Hinton again instructed Archie to make the package flat and thin.

{¶16} Dustin Raleigh ("Raleigh") testified at trial that he was incarcerated in the Lake County Jail after receiving a 30-day jail sentence in March of 2023. Raleigh testified that his cellmate and another male (later identified as Ruscin) were involved in getting the drugs into the jail on March 22, 2023. At approximately 10:24 p.m., the motion-activated exterior camera at the jail captured a vehicle approaching the jail, travelling slowly. The vehicle backed into the furthest spot in the parking lot of the LCE Federal Credit Union, located across from the jail. A male in a white hoodie walked up to the rear of the jail and looked in the direction of the upper level of the jail. The male walked around the area into the tree line nearby the dumpster before returning to the parked vehicle. The male was later observed returning to the area near the dumpster and something appeared to be dangling on the exterior of the jail. A second male, later identified as Jeff Miethke, remained by the vehicle during the incident.

{¶17} At approximately 10:32 p.m., video from inside the jail captured Raleigh peeking into Cell 5 and Ruscin exiting Cell 5. Another phone call was placed to Archie. (State's Exhibit 11, clip 4). This call lasted approximately 10 minutes. During this call, the receiver was not hung up and the phone remained dangling as inmates travelled back and forth between the phone and Cell 5 several times. Raleigh was observed in the video entering Cell 5 and closing the door. Raleigh testified that he was the "look out" and that he informed the other inmates when the car pulled up to the jail.

Case No. 2025-L-025

{¶18}  Shortly after the car's arrival, the inmates were able to retrieve the drugs from the rope. The video showed Ruscin and Raleigh exiting Cell 5 and the pair appeared to be celebrating. Brown was then seen returning to his cell. Brown and Raleigh then appeared to be cleaning up the cell.

{¶19}  At approximately 11:00 p.m., the video recorded Brown talking to other inmates in the common area. He started to rub his nose and his gait became different. Brown was then unable to stand without assistance until he eventually collapsed in the common area.  Ruscin tried to slap Brown to wake him up.  Hinton and Ruscin also attempted to use water to wake Brown up. When these attempts were unsuccessful, the inmates started to perform CPR and continued to do so until corrections officers responded.

{¶20}  Several corrections officers came into the range and locked down the area. The inmates shut Cell 5 as they returned to their cells. Narcan, otherwise known as naloxone, was administered to Brown. The fire department and EMS arrived on scene. Brown regained consciousness and was responsive and placed on a gurney.

{¶21}  Lieutenant Zach Ropos ("Lieutenant Ropos") of the Lake County Sheriff's Office, was dispatched to the Lake County Jail, due to Brown's overdose. When Lieutenant Ropos arrived, medical personnel was working on Brown to revive him. Lieutenant Ropos and another deputy secured Brown's cell, Cell 5. Lieutenant Ropos took photographs of Cell 5. During the search of the cell, a book was discovered. Inside the book was a bindle of a powdery substance. (State's Exhibit 2-D, State's Exhibit 5). The bindle was secured and transported to the Lake County Crime Lab for testing.

Case No. 2025-L-025

{¶22}   Tyler Meader, a forensic analyst in the controlled substance division of the Lake County Crime Laboratory, testified that the bindle consisted of a powdery substance in a paper fold which contained less that 0.06 grams of despropionyl fentanyl, 4-ANPP, fentanyl, and xylazine.  4-ANPP and fentanyl are Schedule II drugs.

{¶23}   After the incident, a K-9 officer conducted a sniff of Range 4-C and alerted to several cells on the range, including Cells 2, 3, 5, and 10. No additional drugs were discovered. Lieutenant Ropos testified he did not observe the hole in the wall. Cell 5 was secured and locked for further investigation.

{¶24}   The day after the overdose, Detective Ross and Detective Thomas McClurkin ("Detective McClurkin") returned to the Lake County Jail to collect several items from Cell 5. The items included the rope made from torn strips of bed sheets, pieces of soap, and pieces of a dustpan. Detective Ross also took pictures of the crevice that was made between the window and the cinderblock and testified that the crevice was big enough to see sunlight through it. (State's Exhibits 3A, 3F, 3H, 3I, 3K). The handmade rope had a hair comb attached to it. The rope was labeled as biohazard because it had been inside the toilet and was wet. Additionally, investigators discovered a thinner rope, similar to fishing line, possibly from the stitching of the jail mattresses, that was also fashioned into a rope wrapped around a small container. A bar of soap with a hole punched through the middle of it was also found.

{¶25}   Detective Ross further testified that Archie and Stewart's phone records were subpoenaed. The phone Archie was using was registered to another individual. Charles Thomas, a criminal intelligence analyst at the Ohio Attorney General's Bureau of Criminal Investigation, received the phone records and loaded them into the PenLink PLX

Case No. 2025-L-025

program to analyze the records and map locations. The map showed Archie's phone was in the proximity of the jail at the time of the delivery.

{¶26} At the close of the State's case, defense counsel made an oral motion to dismiss pursuant to Crim.R. 29, which was denied.

{¶27} The bench trial concluded on January 23, 2025. The following day, the trial court found Archie guilty of each of the charges contained in the indictment. The trial court ordered a presentence investigation ("PSI") and revoked bond.

{¶28} The matter proceeded to sentencing on February 10, 2025. At the time of sentencing the trial court noted that Archie "refused to cooperate with the probation department for the preparation of that [PSI] report." The trial court merged the trafficking offense in Count 2, and possession offense in Count 3, for purposes of sentencing. The State elected to proceed on Count 2. The trial court imposed a prison term of 36 months on Count 1 and 12 months on Count 2. The terms were ordered to be served concurrently to each other.

{¶29} Archie appeals from the trial court's entry on sentence.

**The Appeal**

{¶30} Archie raises three assignments of error for review:

{¶31} "[1.] The jury's finding of guilt and Archie's subsequent convictions for Illegal Conveyance of Drugs of Abuse onto Grounds, Trafficking in a Fentanyl Related Compound, and Possession of a Fentanyl Related Compound were contrary to the manifest weight of the evidence; therefore, Archie's conviction for said counts should be overturned, and Archie should be remanded to the trial court for a new trial."

Case No. 2025-L-025

{¶32} "[2.] The Court's denial of Defendant's Rule 29 Motion should be overturned, and Archie should be remanded to the trial court for a new trial."

{¶33} "[3.] The trial court erred on February 13, 2025 because its sentence was contrary to law and an abuse of discretion."

## Crim.R. 29 - Sufficiency of Evidence & Manifest Weight

{¶34} In his first assignment of error, Archie asserts that his convictions are against the manifest weight of the evidence. Archie also argues, in his second assignment of error that the trial court erred when it denied his motion for acquittal pursuant to Crim.R. 29, finding that the State presented sufficient evidence to support his convictions.

{¶35} On appeal, where an appellant challenges both the sufficiency and the manifest weight of the State's evidence, the appellate court need only address the manifest weight argument. *See State v. Dykes*, 2023-Ohio-4378, ¶ 6 (11th Dist.), quoting *State v. Masters*, 2020-Ohio-864, ¶ 17 (11th Dist.). The determination that a verdict is not against the manifest weight necessarily includes a finding that the conviction was supported by sufficient evidence. *Id.* Thus, we address Archie's first and second assignments of error together.

{¶36} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 1997-Ohio-52, ¶ 24. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶37} Archie was convicted of illegal conveyance of drugs of abuse onto the grounds of a specified governmental facility, a felony of the third degree, in violation of R.C. 2921.36(A)(2); trafficking in a fentanyl-related compound, a felony of the fifth degree, in violation of R.C. 2925.03(A)(2); and possession of a fentanyl-related compound, a felony of the fifth degree, in violation of R.C. 2925.11.

{¶38} R.C. 2921.36(A)(2) provides:

> (A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility or of an institution, office building, or other place that is under the control of the department of mental health and addiction services, the department of developmental disabilities, the department of youth services, or the department of rehabilitation and correction any of the following items:
>
> . . .
>
> (2) Any drug of abuse, as defined in section 3719.011 of the Revised Code;

{¶39} "'Drug of abuse' means any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and any dangerous drug as defined in section 4729.01 of the Revised

Code." R.C. 3719.011(A). Fentanyl and 4-ANPP are Schedule II drugs and considered drugs of abuse.

{¶40} In regards to the trafficking conviction, R.C. 2925.03(A)(2) provides:

(A) No person shall knowingly do any of the following:

. . .

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶41} Regarding the possession conviction, R.C. 2925.11(A) provides: "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶42} Archie argues on appeal that the State failed to prove that the contraband discovered in Cell 5 was connected to him. Archie contends that because there were other instances of drugs in the jail unrelated to him, it was "certainly possible and arguably probable" that the drugs located in Brown's cell were independent of any alleged conveyance. Archie also asserts that he was not identified, beyond a reasonable doubt, as the individual outside the jail using the line. We disagree.

{¶43} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found Archie knowingly conveyed drugs onto the grounds of the Lake County Jail, a detention facility, and knowingly prepared and delivered a controlled substance intended for sale or resale by another person. After reviewing the records and considering the evidence adduced at trial, and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof,

Case No. 2025-L-025

we do not believe that the trial court clearly lost its way so as to create a manifest miscarriage of justice.

{¶44} The evidence and testimony were sufficient to support Archie's convictions and were consistent with the manifest weight of the evidence.

{¶45} Evidence was presented which established that Archie was working in conjunction with inmates at the jail and Stewart to coordinate the delivery of drugs to the jail. Archie was provided the drugs and a ride to the jail. The plan was discussed on recorded jail phone calls between Hinton, Stewart, and Archie. Archie was given instructions on where to find the rope, to flatten the package, and how to attach it to the rope. Archie informed the inmates on the phone call that he was nearby. Shortly thereafter, a male was observed in the area, at the back of the jail, near the rope. Inside, inmates appeared to be celebrating. A short time later, Brown overdosed in the common area. Drugs were discovered inside Brown's Cell. The bindle of drugs in Cell 5 contained fentanyl.

{¶46} We conclude that the State met its burden of persuasion as to the illegal conveyance, trafficking, and possession charges. As Archie's convictions are not against the weight of the evidence, the convictions are necessarily supported by sufficient evidence.

{¶47} As such, Archie's first and second assignments of error are meritless.

**Sentencing**

{¶48} In his third and final assignment of error, Archie contends that his sentence is contrary to law. Specifically, Archie asserts that the trial court did not consider the

Case No. 2025-L-025

factors enumerated in R.C. 2929.12(C) and/or erred in not finding those factors applicable. We disagree.

{¶49} We review felony sentencing pursuant to R.C. 2953.08(G)(2). *See State v. Lamb*, 2023-Ohio-2834, ¶ 9 (11th Dist.); *State v. Meeks*, 2023-Ohio-988, ¶ 11 (11th Dist.); *State v. Glover*, 2024-Ohio-5195. After an appellate court reviews the record and sentence on appeal, the court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand . . . if it clearly and convincingly finds . . . [t]hat the sentence is . . . contrary to law." R.C. 2953.08(G)(2)(b). "'[A] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.'" *Lamb* at ¶ 10, quoting *State v. Shannon*, 2021-Ohio-789, ¶ 11 (11th Dist.), quoting *State v. Brown*, 2012Ohio-199, ¶ 74 (2d Dist.).

{¶50} "The Supreme Court of Ohio has held that while 'R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that "the record does not support the sentencing court's findings under" certain specified statutory provisions. But R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified.'" *State v. Feidler*, 2024-Ohio-2040, ¶ 10 (11th Dist.), *appeal not accepted*, 2024-Ohio-4501, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 28. Accordingly, "R.C. 2953.08(G)(2)(b) . . . does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 30. .

Case No. 2025-L-025

{¶51} Archie was convicted of illegal conveyance of drugs of abuse onto the grounds of a specified governmental facility, a felony of the third degree; trafficking in a fentanyl-related compound, a felony of the fifth degree; and possession of a fentanyl-related compound, a felony of the fifth degree. Because the trafficking and the possession charges merged for purposes of sentencing, Archie was sentenced on the illegal conveyance and trafficking charges.

{¶52} The statutory terms are outlined as follows:

> For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

R.C. 2929.14(A)(3)(b).

> For a felony of the fifth degree, the prison term shall be a definite term of six, seven, eight, nine, ten, eleven, or twelve months.

R.C. 2929.14(A)(5).

{¶53} It is clear from our review of the record that Archie's sentence is within the statutory range for the offenses. Archie does not dispute that the trial court specifically mentioned both R.C. 2929.11 and R.C. 2929.12. Indeed, the trial court stated both at the sentencing hearing and in its judgment entry that it considered the purposes and principles of sentencing and the recidivism and seriousness factors. The trial court specifically stated at the sentencing hearing:

> As for the factors in [R.C.] 2929.12 [sic], the Court finds that the Defendant did act as a part of organized criminal activity. That an individual did suffer serious physical harm as a result of the Defendant's conduct, and quite frankly, just the facts of this case show the Defendant's involvement is much more serious than what we normally see in an illegal conveyance charge.

Case No. 2025-L-025

. . .

But what happened here is the type of - - are the facts that people probably typically think of when they hear of what was charged. And that was an elaborate scheme that was put together to get drugs into the jail. And this doesn't happen if it wasn't for Mr. Archie. He's the one that got the drugs, he's outside. He was bonded out for this very purpose to do this and he carried through with it. The particular facts of this case make this offense more serious than the normal conveyance charge.

There's no factors that indicate it's less serious. When I talk about the seriousness factors, I'm talking about the conveyance charge. Not the trafficking charge, but the conveyance charge.

As for recidivism factors, the Court finds the Defendant has a history of criminal convictions. It goes back twenty-five years. He has previously served a prison term before. Multiple prison terms. He has failed in the past to comply with previous imposed sanctions ordered by the courts.

No factors indicate recidivism is less likely.

. . .

In determining the sentence that is appropriate, I understand what a co-defendant got. This conduct, this incident doesn't happen if it's not for Mr. Archie. There were many people in the inside that were participating in this. But this doesn't happen if it wasn't for Mr. Archie. He's the one that gets bonded out. He is the one that brings the drugs to the jail. He's the one that attaches it to the rope on the outside. This doesn't happen but for Mr. Archie. And his conduct is more serious than Eric Ruscin's conduct as involved in this incident.

{¶54} Archie argues that the trial court should have considered that the victim, Brown, induced the offense as Brown was a drug addict. Archie also contends that he was acting under strong provocation as he was asked to complete the conveyance as payback for being bonded out of jail. He argues, based on the foregoing, that the trial

Case No. 2025-L-025

court should have given him a lesser sentence. Archie essentially asks this court to reweigh the evidence and determine that his sentences are inconsistent with R.C. 2929.11 and 2929.12. Pursuant to *Jones*, this court is not permitted to do so. "A 'trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors in exercising its discretion.' *State v. DelManzo*, 2008-Ohio-5856, ¶ 23 (11th Dist.). A sentencing court fulfills its duties under R.C. 2929.11 and 2929.12 by stating that it considered them. *State v. DeLuca*, 2021-Ohio-1007, ¶ 18 (11th Dist.)." *State v. Miller*, 2025-Ohio-339, ¶ 21 (11th Dist.).

{¶55} Here, the trial court imposed the maximum sentence available to it on Count 2. The court below expressly stated that it considered the purposes and principles of sentencing and the recidivism and seriousness factors. Although not required, the trial court discussed several recidivism factors. Specifically, the trial court noted that Archie had a prior criminal history including multiple prior prison terms. Thus, Archie's sentences are not clearly and convincingly contrary to law.

{¶56} Archie's third and final assignment of error is also meritless.

## Conclusion

{¶57} For the reasons set forth above, we affirm the judgment of the Lake County Court of Common Pleas.

EUGENE A. LUCCI, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-L-025

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit.  It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE EUGENE A. LUCCI,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-025