[Cite as *State v. Abbott*, 2026-Ohio-2127.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | | |
| Appellee, | : | | CASE NO. CA2024-12-084 |
| | : | | <u>OPINION AND</u> |
| - vs - | | | <u>JUDGMENT ENTRY</u> |
| | : | | 6/8/2026 |
| CURTIS LEE ABBOTT, | : | | |
| Appellant. | : | | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 24CR41783

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.

# **O P I N I O N**

**BYRNE, J.**

{¶ 1}  Appellant, Curtis Lee Abbott, appeals his conviction in the Warren County Court of Common Pleas after a jury found him guilty of one count of second-degree felony felonious assault. For the reasons set forth below, we affirm Abbott's conviction.

## I. Factual and Procedural Background

{¶ 2}  On June 17, 2024, the Warren County Grand Jury returned a two-count indictment charging Abbott with one count of first-degree felony rape and one count of second-degree felony felonious assault.[1] The charges stemmed from allegations that Abbott, who had previously tested positive for HIV as a carrier of the AIDS virus, sexually assaulted his cellmate, Bradley, during the early morning hours of November 30, 2023, while both men were incarcerated at the Warren County Jail located in Lebanon, Warren County, Ohio.[2] The assault was alleged to have included Abbott both anally raping Bradley and performing oral sex on Bradley without Abbott first disclosing to Bradley that he, Abbott, had previously tested positive for HIV. There is no dispute that inmates housed in the Warren County Jail are prohibited from engaging in sexual conduct with one another, irrespective of their HIV status.

{¶ 3}  Abbott was arraigned on June 18, 2024, and entered a not guilty plea to both charges. Bond was set at $100,000. Approximately four months later, on October 28, 2024, the matter proceeded to a one-day jury trial, during which the jury heard testimony from five witnesses. This included testimony from the alleged victim, Bradley, and from a corrections officer with the Warren County Sheriff's Office, Officer John Snelling. It also included testimony from a nurse employed by Tri-Health who conducted a forensic examination and rape kit on Bradley at Bethesda Arrow Springs Hospital, as well as from a forensic DNA analyst employed by the Ohio Bureau of Criminal

---

1. The rape charge was brought pursuant to R.C. 2907.02(A)(2), whereas the felonious assault charge was brought pursuant to R.C. 2903.11(B)(1).

2. To protect his privacy, we have provided the victim of Abbott's alleged sexual assault with a fictitious name.

Investigation who had tested the swabs taken from Bradley's penis, revealing the presence of Abbott's DNA.

*A. Summary of Officer Snelling's Trial Testimony*

{¶ 4} The first witness to testify was Officer Snelling. Officer Snelling testified that, while conducting his rounds during his regular midnight to 8:00 a.m. shift on the morning of November 30, 2023, he walked past one of the jail's medium-secured A-pod cells where he observed Bradley awake inside, lying on his back on a mat on the floor, facing up, with the mat against the cell's back wall. Officer Snelling testified that he did not see anyone else in the cell with Bradley at that time. Officer Snelling instead testified that, because the cell's other bunk was empty, he believed that there were no other inmates housed in that cell with Bradley and "just thought that [Bradley had] decided to [lie] on the floor that night."

{¶ 5} Officer Snelling testified that as he approached the next jail cell, he noticed that Bradley was waving at him. He stated that Bradley's waving caused him to then stop and turn back toward Bradley's cell. Upon his return, Officer Snelling testified that Bradley "pointed downwards" in the direction of his feet, "like he was in distress." Bradley's pointing prompted Officer Snelling to come "closer to the door to look down into the window." Officer Snelling testified that "that is when [he] observed Abbott," lying "kind of on his stomach side," with his head in Bradley's "groin area, going up and down, in an up and down motion." Officer Snelling testified that although he could not see exactly what was happening, "just the head going up and down in that general area," he nevertheless believed that it was Abbott performing oral sex on Bradley.

{¶ 6} Believing that Abbott was performing oral sex on Bradley, Officer Snelling testified that he directed Abbott to stop, which Abbott did, and that Bradley then "covered up with a blanket." Officer Snelling testified that he then opened the cell door and "told

Abbott to exit the cell. He complied and came walking out." Officer Snelling then testified that, as Abbott walked past him, Abbott claimed to have merely been "helping [Bradley] with his back, that his back was hurting." Officer Snelling testified that Abbott's comment about helping Bradley with his back was unprompted and not in response to any question. As Officer Snelling testified, "No, I just gave him a directive to exit his cell and as he's passing me he stated that and I just told him to have a seat at the table."

*B. Summary of Bradley's Trial Testimony*

{¶ 7} Bradley was the second witness to testify. He testified that, on November 29, 2023, he was housed in the Warren County Jail following his conviction on drug charges. Bradley testified that Abbott was his cellmate at that time and had been for approximately two days. Bradley acknowledged that he and Abbott had not been cellmates for "too long." He explained that this was because he "was trying to get moved out of the pod, they kept moving me cell to cell," after learning from his brother that one of the jail's gangs, the "C dubs," had put a "hit" out on him. Bradley testified that learning of this alleged "hit" prompted his mother and other members of his family to "call to try to get [him] moved out and they just kept moving me cell to cell." This ultimately resulted in Bradley being placed in several different cells with several different inmates during the two weeks he was in jail, one of whom happened to be Abbott.

{¶ 8} Bradley testified that when he was moved into a cell with Abbott, he and Abbott had no conflicts or arguments. "He was just talking about his past," including what he had done to get sent to jail. "I mean, he read his books, he stayed on his bottom rack." "He just stayed there and read, we talked a little bit. And, then that was it." With Abbott on the bottom bunk, Bradley testified that he was supposed to sleep on the top, but that he had moved his bedding onto the floor because he "kept flopping back and forth," "detoxing," and exhibiting drug withdrawal symptoms, such as "going to the toilet a lot,

throwing up, cold and hot sweats," and "backaches." Bradley testified that this was done to avoid disturbing Abbott, to "give the man respect," and "not be jumping off the rack, going to the bathroom and all that and waking him up" when Abbott was trying to sleep. Yet, even after moving to the floor, Bradley testified that he was having trouble sleeping because it is cold in jail, "and when it's cold and you're going through that kind of sickness, it ain't no fun."

{¶ 9}  Bradley testified that his backaches became more severe later that evening and into the early morning hours of November 30, 2023. Bradley testified it was at this time that Abbott "came over and he knelt down and he's like, are you all right? Being real kind" and "real nice." Bradley testified that he responded, "well my back is hurting me from where I'm detoxing and everything," to which Abbott said, "well let me show you something." Bradley testified that Abbott then pulled his shirt up and started rubbing his back for a few seconds, "and then the next thing I know, he had me roll back over and had his hand on my chest and he pulled my pants down a little bit and he's started performing oral sex on me." Bradley testified that he then asked Abbott, "what are you doing? And he was like, well, this is a method I know." Bradley testified that just prior to this, before Abbott had begun performing oral sex on him, he had "felt like a penetration" in his "hind end," possibly a finger, being inserted into his anal area, causing Bradley to feel "pressure" in his rectum.

{¶ 10} Bradley testified that Abbott then put a hand on his chest and said to him, "It's all right, it's all right, you're going to be all right," before beginning to perform oral sex on him again, Abbott "sucking" on his penis with his mouth. Bradley then testified:

> The next thing I know, I'm just laying there, I did not – I was shocked, like you know, like being in a car wreck – being in shock and the next thing I know I hear the door pop from where the C.O.'s come in and I'm just relaxed and then when the C.O. walked by, I went like this (indicating). And then that's

- 5 -

> when they pulled – they kicked the door and he was like, I remember the words, what the hell are you doing? And that's when he jumped up and said, oh, nothing, nothing, nothing. His back was hurting. And then the C.O. had them pop the door, pulled him out, put him in a different room and then separated us, put me in another room, and took me to the hospital.

Thereafter, when asked by the State whether Abbott had ever disclosed to him that he had previously tested positive for HIV, Bradley testified, "No, ma'am." Bradley further testified that he learned of Abbott's prior HIV-positive test only after a detective told him the next day, on December 1, 2023. Bradley also testified, "No, ma'am," when the State asked whether he had ever consented to any sexual conduct with Abbott. DNA testing conducted by a forensic DNA analyst with the Ohio Bureau of Criminal Investigation later revealed Abbott's DNA on Bradley's penis.

### C. The Jury's Verdict and the Trial Court's Sentence

{¶ 11} On October 29, 2024, the jury returned a not guilty verdict finding the State had not proven beyond a reasonable doubt that Abbott had anally raped Bradley. The jury did find, however, that the State had proven beyond a reasonable doubt that Abbott had performed oral sex on Bradley without first disclosing to Bradley that he had previously tested positive for HIV as a carrier of the AIDS virus. Sentencing was held on November 13, 2024. At sentencing, the trial court sentenced Abbott to an indefinite term of two to three years in prison, less 233 days of jail-time credit. The trial court also ordered Abbott to pay court costs and notified him that he would be subject to a mandatory minimum postrelease control term of 18 months, with a maximum of up to three years.

### II. Abbott's Appeal and Single Assignment of Error

{¶ 12} Abbott filed a notice of appeal. Following the parties' briefing, Abbott's appeal was submitted to this court for review. Abbott's appeal is now properly before this

court for decision. To support his appeal, Abbott has raised one assignment of error for this court's consideration. That assignment of error states:

> ABBOTT'S CONVICTION FOR FELONIOUS ASSAULT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE NOR THE WEIGHT OF THE EVIDENCE.

In his single assigned error, Abbott challenges the jury's verdict finding him guilty of felonious assault as not being supported by sufficient evidence and against the manifest weight of the evidence. We find no merit to either challenge.

### III. The Applicable Standards of Review

{¶ 13} "The standards governing sufficiency and manifest-weight challenges are well settled." *State v. Evans*, 2026-Ohio-1237, ¶ 28 (12th Dist.).

{¶ 14} The sufficiency-of-the-evidence standard of review "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). When making this determination, "[t]he relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus. When conducting this review, "appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Carter*, 2018-Ohio-29, ¶ 7 (8th Dist.), citing *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79-80. Therefore, when determining whether a defendant's conviction was supported by sufficient evidence, "[t]his court merely determines whether there exists any evidence in the record that the trier of fact could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt." *State v. Brummett*, 2024-Ohio-2332, ¶ 9 (12th Dist.).

{¶ 15} "Manifest weight presents a different question." *Evans* at ¶ 29. "[T]he manifest-weight-of-the-evidence standard of review applies to the State's burden of persuasion." *State v. McCollum*, 2026-Ohio-393, ¶ 13 (12th Dist.), citing *State v. Messenger*, 2022-Ohio-4562, ¶ 26. When determining whether a jury's verdict is against the manifest weight of the evidence, this court, sitting as the "thirteenth juror," reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses who testified at trial. *State v. Brown*, 2025-Ohio-2804, ¶ 30. Following this review, we then determine, in resolving any conflicts in the evidence, whether the jury clearly lost its way and created a manifest miscarriage of justice that requires reversal of the jury's verdict and the ordering of a new trial. *State v. Jordan*, 2023-Ohio-3800, ¶ 17. Such a determination is rare, however, arising only in exceptional cases where the evidence presented at trial weighs heavily against the jury's verdict and in favor of acquittal. *State v. Nkoyi*, 2024-Ohio-3144, ¶ 41 (12th Dist.). "This may occur only when there is unanimous disagreement with the jury's verdict." *State v. Palma*, 2025-Ohio-1318, ¶ 9 (12th Dist.).

### IV. Felonious Assault in Violation of R.C. 2903.11(B)(1)

{¶ 16} The jury found Abbott guilty of felonious assault in violation of R.C. 2903.11(B)(1). Pursuant to that statute, no person who knows he has tested positive for HIV as a carrier of the AIDS virus shall knowingly "[e]ngage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct." Sexual conduct is defined by R.C. 2907.01(A) to include "fellatio" between any two persons, regardless of sex. Fellatio is a sexual act involving a person's penis and the mouth, commonly referred to as oral sex. *State v. Roark*, 2013-Ohio-217, ¶ 52 (12th Dist.). "Because R.C. 2903.11(B)(1) regulates conduct, not speech," and "is rationally related to the state's legitimate interest in preventing the transmission of HIV to

sexual partners who may not be aware of the risk," the statute does not violate either the First Amendment to the United States Constitution or the Equal Protection Clauses of the United States or Ohio Constitutions. *State v. Batista*, 2017-Ohio-8304, ¶ 3.

### V. Abbott's Four Arguments

{¶ 17} In his sole assignment of error, Abbott challenges only one aspect of the jury's verdict, namely the jury's finding that the State proved beyond a reasonable doubt that he had engaged in sexual conduct with his cellmate, Bradley, during the early morning hours of November 30, 2023. To support this challenge, Abbott raises four arguments for our consideration. Initially, Abbott argues that the jury's verdict finding him not guilty on the rape charge firmly establishes that Bradley lied about Abbott anally raping him, as the State had alleged. This leads Abbott to proclaim that, if Bradley had "lied about being anally raped, he very well could have lied about the oral sex. This is where the jury lost its way."

{¶ 18} Next, Abbott argues that the jury lost its way by not believing his trial counsel's assertion that whatever Officer Snelling saw when he first looked into Abbott's and Bradley's shared jail cell "was not oral sex" but was instead Abbott merely "helping" Bradley with his back. More specifically, Abbott argues that "[t]he manifest weight of the evidence supports Abbott's statement that he was only helping [Bradley] with his back," given Officer Snelling's testimony that he could not initially "see what Abbott was doing . . . because of where the window to the cell was located compared to the mat on the floor" where both he and Bradley were then lying.

{¶ 19} Additionally, Abbott argues that the jury lost its way by giving any weight to the DNA evidence presented against him in this case, evidence that indicated Abbott's DNA was found on Bradley's penis, despite the testimony elicited at trial setting forth the various bodily fluids and parts of the body from which DNA can be found, such as a

person's blood, saliva, skin cells, or hair, and the multitude of ways that DNA can be transferred from one person to another, including "hand to hand; hand to body; or even hand to hand, then to the face." Abbott argues that the evidence placing his DNA on Bradley's penis should also have been discredited by the jury when considering "the incident report in this case did not indicate how Abbott's DNA got there. All we know for certain is that Abbott was helping [Bradley] with his back."

{¶ 20} Finally, Abbott argues that the jury lost its way by finding Bradley's oral sex allegations credible, despite Bradley's other demonstrated lies and clear motives to lie, which include Bradley's known desire to change jail cells and apparent need to avoid getting into "any more trouble" while in jail. To support this claim, Abbott notes that it was he, not Bradley, who "was cooperative; admitted that he was HIV positive, consented to a DNA test, agreed to speak with deputies, and did not cause any trouble." According to Abbott, because he was cooperative in the investigation into Bradley's allegations of sexual assault and generally well behaved even after Bradley accused him of rape, the jury should have found Bradley had lied not only about Abbott having anally raped him, but also about Abbott having performed oral sex on him.

## VI. Abbott's Four Arguments Lack Merit

{¶ 21} Upon review, we find no merit in any of Abbott's four arguments set forth above. Abbott's arguments are nothing more than his attempts to discredit the State's case and the evidence that the State presented against him at trial. However, as the trier of fact, the jury was free to believe all, part, or none of the testimony offered by each of the State's witnesses who testified at his trial. *State v. Eads*, 2025-Ohio-2815, ¶ 11 (12th Dist.). This necessarily includes the testimony offered by both the alleged victim, Bradley, and Officer Snelling, a direct eyewitness to the crime. This is because, as it is now well established, "the decision whether, and to what extent, to credit the testimony of particular

witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Bedsole*, 2022-Ohio-3693, ¶ 35 (12th Dist.). "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact or because the trier of fact believed the testimony of the state's witnesses." *State v. MacPhereson*, 2024-Ohio-5359, ¶ 21 (12th Dist.). This holds true even in felonious assault cases such as this. *See State v. Bean*, 2014-Ohio-908, ¶ 15 (9th Dist.).

{¶ 22} It is for these reasons that we must reject Abbott's argument challenging the jury's verdict finding he had engaged in sexual conduct with his cellmate, Bradley, as being against the manifest weight of the evidence. This is significant when considering the longstanding principle that "[t]he determination that a verdict is not against the manifest weight necessarily includes a finding that the conviction was supported by sufficient evidence." *State v. Archie*, 2025-Ohio-5577, ¶ 35 (11th Dist.). This court will not reverse a defendant's conviction for felonious assault in violation of R.C. 2903.11(B)(1) where, as here, we find that the jury could have reasonably concluded from the substantial evidence presented at the defendant's trial that the State had proved the offense beyond a reasonable doubt. *State v. Worship*, 2022-Ohio-52, ¶ 39 (12th Dist.). That is clearly the case here, given not only Bradley's testimony about the alleged assault but also the DNA evidence directly linking Abbott to the crime. Abbott's arguments to the contrary lack merit.

{¶ 23} Accordingly, because the jury's verdict finding Abbott guilty of felonious assault was both supported by sufficient evidence and was not against the manifest weight of the evidence, Abbott's single assignment of error lacks merit and is overruled.

**VII. Conclusion**

**{¶ 24}** For the reasons set forth above, and having now overruled Abbott's single assignment of error, Abbott's appeal of his conviction for one count of second-degree felony felonious assault is denied.

**{¶ 25}** Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

---

# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Matthew R. Byrne, Judge*